**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JAY ENCISO, Representative of**
**JAIRO ENCISO (Deceased),**

**Plaintiff,**

**vs.** **Civ. No. 21-323 JCH/JFR**

**PRESBYTERIAN HEALTHCARE SERVICES; ROGER GILDERSLEEVE, M.D.; ANDREW EDWARDS, M.D.; GABRIEL PALLEY, M.D.; HERMAN GLEICHER, M.D.; ILSE PONCE-HERNANDEZ, R.N.; and DARLENE GONZALES, R.N.,**

**Defendants.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]**

**THIS MATTER** is before the Court on the PHS Defendants' Motion to Dismiss and/or for a More Definite Statement of Plaintiff's State Law Claims, and for a Stay Until Plaintiff Complies with the Prerequisites of the New Mexico Medical Malpractice Act ("Motion to Dismiss"), filed April 16, 2021.[2] Doc. 5. Plaintiff filed a Response in Opposition on April 29, 2021. Doc. 9. The PHS Defendants filed a Reply on May 13, 2021. Doc. 16. Having reviewed the parties' submissions and the relevant law, and for the reasons set forth herein, the Court finds that the PHS Defendants' Motion to Dismiss is well taken in part and recommends that it be

---

[1] By an Order of Reference filed May 3, 2021 (Doc. 12), the presiding judge referred this matter to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the motions.

[2] The PHS Defendants include Presbyterian Healthcare Services, Roger Gildersleeve, M.D., Andrew Edwards, M.D., Gabriel Palley, M.D., and Ilse Ponce-Hernandez, R.N. Doc. 1 at 1. The PHS Defendants state that there is no evidence that Plaintiff served either the Complaint or the Amended Complaint upon Defendants Herman Gleicher, M.D., and Darlene Gonzales, R.N. Doc. 1 at 2, ¶ 9. Plaintiff filed an "Objection to Defenses' Statement About Process of Service" in response to the PHS Defendants' representations regarding service. Doc. 10.

granted as to Plaintiff's federal claims. The Court further recommends that Plaintiff's state law claims be remanded to Second Judicial District Court, State of New Mexico, County of Bernalillo**.**

## I. PROCEDURAL BACKGROUND

On March 26, 2020, Plaintiff filed a Civil Complaint in Second Judicial District Court, State of New Mexico, County of Bernalillo, seeking an award "for the severe and constant medical neglect of Plaintiffs' [sic] father, Jairo Alberto Enciso, mental anguish, Discrimination, Personal Injury(s), and the awful quality of life." Doc. 1-1 at 2. On July 7, 2020, the PHS Defendants filed a Motion to Dismiss or for More Definite Statement. *Id.* at 1-2, ¶ 2. On March 23, 2021, the state district court granted the PHS Defendants' motion and granted Plaintiff leave to amend his complaint. *Id.* at 2, ¶ 3. On March 26, 2021, Plaintiff filed an Amended Complaint appearing to assert claims arising under federal and state law. *Id.* at ¶¶ 4-5. On April 9, 2021, the PHS Defendants removed this matter to this Court pursuant to 28 U.S.C. §§ 1441(a)[3] and 1446 and D.N.M.LR-Civ. 81.1.

## II. PLAINTIFF'S ALLEGATIONS

### A. Claims Against Roger Gildersleeve, M.D.

On March 28, 2017, Jairo Enciso and his wife Mary Enciso presented to Presbyterian Kaseman Hospital where they saw Roger Gildersleeve, M.D. Doc. 1-1 at 80-81, ¶ 1. The couple reported physical problems Jairo Enciso was experiencing "that had been ongoing and were progressing," including progressive malnourishment. *Id.* Plaintiff, Jairo Enciso's son, alleges that Dr. Gildersleeve attempted to dismiss Jairo Enciso's medical complaints based on his age,

[3] "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

and that it was only after serious protest and argument from Mary Enciso that tests were ordered between March 28, 2017, and June 2017. *Id.* Plaintiff alleges that an unnamed specialist who performed one of the tests recommended to Dr. Gildersleeve that Jairo Enciso be hospitalized, but that Dr. Gildersleeve ignored the recommendation. *Id.* at 80-81, ¶ 1. Plaintiff alleges that Dr. Gildersleeve and Presbyterian Healthcare Services discriminated against Jairo Enciso based on his age when they failed to take his medical complaints seriously or heed the hospitalization recommendation.[4] *Id.* Plaintiff further alleges that Dr. Gildersleeve and Presbyterian Healthcare Services were medically negligent by failing to properly diagnose Jairo Enciso's medical condition, which turned out to be amyotrophic lateral sclerosis ("ALS"), and sending Jairo Enciso home where he suffered choking, ongoing starvation, falling and hurting himself, the progressive inability to speak, and severe mental anguish. *Id.* Plaintiff contends that Dr. Gildersleeve's and Presbyterian Healthcare Services' age discrimination and medical neglect hastened his Jairo Enciso's death.

**B. <u>Claims Against Andrew Edwards, M.D.</u>**

On or about June 16, 2017, Jairo Enciso and Mary Enciso presented to the Emergency Room at Presbyterian Kaseman Hospital where they saw Andrew Edwards, M.D. Doc. 1-1 at 81-82, ¶ 2. Plaintiff alleges that Mary Enciso insisted that Jairo Enciso had serious medical problems that should not be ignored based on Jairo Enciso's age. *Id.* Plaintiff alleges that Dr. Edwards discharged Jairo Enciso and sent him home without a diagnosis or medical attention. *Id.* Plaintiff alleges that Dr. Edwards and Presbyterian Healthcare Services discriminated against Jairo Enciso based on his age and were medically negligent by failing to properly diagnose his medical condition and sending him home without any medical attention

[4] Jairo Enciso was 67 years old. Doc. 1-1 at 81, ¶ 1.

where he suffered more pain, injuries, constant hunger, and severe mental anguish. *Id.* Plaintiff contends that Dr. Edwards' and Presbyterian Healthcare Services' age discrimination and medical neglect hastened Jairo Enciso's death. *Id.*

**C. Claims Against Gabriel Palley, M.D.**

On June 23, 2017, Jairo Enciso was admitted to Presbyterian Rust Hospital and was under the care of Gabriel Palley, M.D. Doc. 82-83, ¶ 3. During the hospital stay, Plaintiff alleges that a peripherally inserted central catheter ("PICC Line") and gastronomy tube ("G Tube") were placed to administer nutrition to Jairo Enciso. *Id.* Plaintiff alleges that the G Tube provoked gastroesophageal reflux disease ("GERD") and the PICC Line was later removed despite Plaintiff's request that it continue to be used. *Id.* Plaintiff alleges that the refusal by "several individuals" with Presbyterian Healthcare Services to reinsert the PICC Line for administering nutrition led to Jairo Enciso suffering more pain, an unnecessary awful quality of life, and severe mental anguish. *Id.*

**D. Claims Regarding Medication Treatment**

On June 28, 2017, Jairo Enciso was transferred from Presbyterian Rust Hospital to Presbyterian Downtown Hospital where he was seen by two neurologists. Doc. 1-1 at 83, ¶ 4. Plaintiff alleges that one of the neurologists diagnosed Jairo Enciso with ALS, and the other neurologist determined that Jairo Enciso was not a good candidate for a new FDA approved medication called Radicava because Jairo Enciso's disease was too far advanced. *Id.* Plaintiff alleges that another medication called Riluzole would slow the progression of ALS. *Id.* Plaintiff contends that had Jairo Enciso been hospitalized earlier, as recommended, that he would have been diagnosed sooner, been treated with Riluzole much sooner, and would have been a candidate for Radicava thereby extending his life. *Id.*

**E. Claims Against Herman Gleicher, M.D.**

During Jairo Enciso's stay at Presbyterian Downtown Hospital, he was under the care of Herman Gleicher, M.D. Doc. 1-1 at 83-84, ¶¶ 5-6. Plaintiff alleges that based on Dr. Gleicher's refusal to fill out forms to help Jairo Enciso get long overdue care for his condition, Plaintiff called the Presbyterian Healthcare Services Patient Advocacy line twice, and also spoke with a nurse supervisor, to report that Jairo Enciso was being neglected, discriminated against and suffering. *Id.* Plaintiff alleges that no "rectification" came from his calls and that his reports were altered and disregarded. *Id.* Plaintiff contends that the fraudulent activity and discrimination against Jairo Enciso based on his age and disability, and against Plaintiff's character, caused extreme mental anguish. *Id.*

On or about July 6, 2017, Jairo Enciso was discharged from Presbyterian Downtown Hospital. Doc. 1-1 at 84-85, ¶ 7. Plaintiff alleges that Dr. Gleicher sent Jairo Enciso home without any medication to treat his ALS, without discharge instructions for how to operate Jairo Enciso's feeding pump, and without any equipment for providing water. *Id.* Plaintiff alleges that the nurse who was scheduled to show up and provide aftercare instructions failed to do so. *Id.* Plaintiff contends that Dr. Gleicher discriminated against Jairo Enciso based on his age and disability which caused severe mental anguish.

**F. Claims Against Heather M. Greene, M.D. and Ilse Ponce-Hernandez, R.N.**

On or about July 7, 2017, Jairo Enciso began seeing Heather M. Greene, M.D., for his primary care. Doc. 1-1 at 85-86, ¶ 8. Jairo Enciso saw Dr. Greene for primary care until the time of his death on November 4, 2017. *Id.* Plaintiff alleges that at Jairo Enciso's initial visit with Dr. Greene, she refused to prescribe any medication to Jairo Enciso for his ALS, forcing him to wait until July 11, 2017, to get his medication as a neurology outpatient. *Id.* Plaintiff

contends that Presbyterian Healthcare Services had knowledge of but failed to provide treatment to Jairo Enciso for his ALS until July 11, 2017, causing his disease to progress more rapidly and causing severe mental anguish. *Id.*

Plaintiff also alleges that during the course of Jairo Enciso's care and treatment with Dr. Greene, Dr. Greene's office ignored Jairo Enciso's medical needs by delaying prescriptions for medical equipment and food supplements ordered by an expert dietician for treating severe malnourishment. Doc. 1-1 at 86, ¶ 9. Plaintiff alleges that Ilse Ponce-Hernandez, R.N., delayed a prescription for medical equipment to administer water and performed acts of deceit regarding the timing of the prescription. *Id.* Plaintiff contends that Dr. Greene and RN Ponce-Hernandez discriminated against Jairo Enciso based on his disability and the incurability of his disease and that their discrimination caused more mental anguish.

**G. Claims Against Darlene Gonzales, R.N.**

On or about July 7, 2017, Presbyterian Healthcare Services assigned Home Healthcare nurse Darlene Gonzales, R.N., to provide care to Jairo Enciso at his home. Doc. 1-1 at 86, ¶ 10. Plaintiff alleges that RN Gonzales failed to show up for appointments without notice or explanation and falsely reported an inability to get in contact with the family. *Id.* Plaintiff contends that RN Gonzales discriminated against Jairo Enciso based on his disability and the incurability of his disease and caused anguishing mental pain. *Id.*

**H. Claims Regarding Hospice Care**

Plaintiff claims that many of Presbyterian Healthcare Services' medical staff at all levels excessively attempted to pressure Jairo Enciso's family into placing Jairo Enciso in hospice care. Doc. 1-1 at 87, ¶ 11. Plaintiff alleges that his family obtained the resources for and wanted to try every available treatment for Jairo Enciso, including Radicava, but that the family's requests were ignored by doctors who did not believe the family was capable of paying for the

medication. *Id.* Plaintiff contends that he and Jairo Enciso suffered extreme mental anguish as a result.

**I. <u>Claims Pursuant to Section 1557 of the United States Patient Protection and Affordable Care Act of 2016</u>**

Plaintiff alleges that the named Defendants discriminated against Jairo Enciso based on his age, his disability and the incurability of his disease in violation of Section 1557 of the United States Patient Protection and Affordable Care Act of 2016 (the "ACA"). Doc. 1-1 at 87, ¶ 12.

## III. PHS Defendants' Motion

### A. Arguments

The PHS Defendants first argue that Plaintiff's state law claims should be dismissed and/or Plaintiff should be required to make a more definite statement of his state law claims. Doc. 5 at 5-7. In support, they argue that it is unclear whether Plaintiff's Amended Complaint is intended to allege state law claims. *Id.* For example, the PHS Defendants assert that

> Plaintiff alleges in an introductory paragraph medical neglect, personal injury, and wrongful death. In some paragraphs, Plaintiff appears to allege grounds for a claim of "Severe Mental Anguish" as well. . . . Plaintiff also alleges discrimination due to age and disability "along with Jay Enciso's character[.]" . . . Because Plaintiff's causes of action are not clearly stated, Defendants ask the Court to require Plaintiff to amend his Amended Complaint to make a more definite statement of his causes of action.
>
> Furthermore, there is no civil cause of action for "medical neglect," "severe mental anguish" or discrimination "due to character" under New Mexico or Federal law, and Plaintiff fails to identify the legal basis of such claims.

*Id.* The PHS Defendants, therefore, move to dismiss Plaintiff's causes of action of medical neglect, severe mental anguish, or discrimination based on character for failure to state a claim upon which relief may be granted. *Id.*

The PHS Defendants next argue that if Plaintiff were to argue that his Amended Complaint asserts a medical malpractice claim against the PHS Defendant who treated Jairo Enciso, that the Medical Malpractice Act ("MMA") provides that "no malpractice action may be filed in any court against a qualifying health care provider before application is made to the medical review commission and its decision is rendered." Doc. 5 at 7 (citing NMSA 1978 § 41-5-15). Here, the PHS Defendants assert that Presbyterian Healthcare Services became a qualified healthcare provider under the MMA on September 30, 2017, thereby requiring a decision of the medical review commission on any of Plaintiff's allegations of medical malpractice that occurred on or after September 30, 2017. *Id.*

Finally the PHS Defendants argue that Plaintiff's Amended Complaint fails to allege the necessary elements of a claim under Section 1557 of the ACA for several reasons. Doc. 5 at 8-10. First, they argue that Section 1557 offers no protection from discrimination based on incurability. *Id.* Second, they argue that Plaintiff's claim of discrimination against Jairo Enciso based on disability fails because Plaintiff has not alleged that Jairo Enciso was treated differently than other patients based solely on disability as required. *Id.* Third, they argue that Plaintiff's Amended Complaint seeks only compensatory damages, as opposed to injunctive relief, and that an entitlement to compensatory damages requires proving intentional discrimination. *Id.* To that end, the PHS Defendants argue that Plaintiff has failed to allege that they were fueled by discriminatory animus or deliberate indifference in their treatment of Jairo Enciso. *Id.* Finally, the PHS Defendants argue that to state a claim under the Age Discrimination Act, a claimant must exhaust administrative remedies before filing an action in federal court, which Plaintiff has failed to do. *Id.*

In sum, the PHS Defendants ask the Court to dismiss Plaintiff's Amended Complaint with prejudice in its entirety or, alternatively, that the Court dismiss Plaintiff's federal claims and

require Plaintiff to make a more definite statement of his state law claims. Doc. 5 at 11. The PHS Defendants also ask the Court to stay the case to the extent Plaintiff is alleging medical malpractice for care provided by PHS Defendants on or after September 30, 2017, so that Plaintiff can satisfy the statutory obligations of the MMA . *Id.*

In his Response, Plaintiff asserts that the Amended Complaint "[c]learly state[s] what offenses were committed, and why they are offenses to said state, and to section 1557 of the United [S]tates Patient Protection and Affordable Care Act." Doc. 9 at 2, ¶ 1. Plaintiff further asserts that none of the Defendant physicians are qualified healthcare providers pursuant to the New Mexico Medical Malpractice Act.[5] *Id.* at 4, ¶ 3.

**B. Legal Standard**

In order to survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quotation marks omitted) (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'")); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (same). While a complaint attacked under Rule 12(b)(6) does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of the entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 U.S. at 553-56 (citations omitted). The complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of the alleged conduct. *Id.* at 555-56.

---

[5] Plaintiff attached email communications between himself and the Patient's Compensation Fund to demonstrate no PCF coverage for Andrew Edwards, M.D., Roger Gildersleeve, M.D., Gabriel Palley, M.D., or Herman Gleicher, M.D. Doc. 9 at 7-16.

The Court accepts as true all well-pled allegations, and views them in the light most favorable to the plaintiff. *Ridge at Red Hawk, LLC*, 493 F.3d at 1177. "Well-plead," however, means that the allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk v. Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 127 S. Ct. at 555-56. Overall, the complaint must "possess enough heft" to show that the pleader is entitled to relief. *Id.* at 557.

A document filed *pro se* is to be liberally construed, however inartfully drafted, and "held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and quotation marks omitted). Furthermore, "[a]ll pleadings shall be so construed as to do substantial justice." *Id.* (quoting Fed. R. Civ. P. 8(f) (quotation marks omitted)). "[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). While the Court liberally construes Plaintiff's Amended Complaint, it does not act as his advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840-41 (10th Cir. 2005).

**C. Analysis**

**1. Federal Claims**

Section 1557 of the ACA is titled "Nondiscrimination" and provides that individuals shall not be

> excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116. Section 1557 references and incorporates four different civil rights statutes: Title VI, which prohibits discrimination on the basis of race, color, and national origin; Title IX, which prohibits discrimination on the basis of sex; the Age Discrimination Act, which prohibits discrimination on the basis of age; and section 504 of the Rehabilitation Act, which prohibits discrimination on the basis of disability. Section 1557 explains that the enforcement mechanisms provided for and available under these respective statutes shall apply for purposes of violations of this subsection. *Id.*

Here, Plaintiff is alleging the PHS Defendants discriminated against Jairo Enciso based on age, disability, and incurability.[6] As such, the Court looks to the enforcement mechanisms of the Age Discrimination Act and Section 504 of the Rehabilitation Act to determine whether Plaintiff has stated a plausible claim.

**a. Age Discrimination Act**

The purpose of the Age Discrimination Act is "to prohibit discrimination on the basis of age in programs or activities receiving Federal financial assistance." 42 U.S.C. § 6101. The Age Discrimination Act further provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102.

The Amended Complaint states Jairo Enciso's age as 67 years old. Plaintiff alleges that Presbyterian Healthcare Services, Roger Gildersleeve, M.D., Andrew Edwards, M.D., and

---

[6] Section 1557 does not provide an enforcement mechanism for alleged discrimination based on "incurability" of a disease. Further, Plaintiff has offered no other legal basis to support a claim of discrimination based on "incurability" of a disease. As such, Plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Herman Gleicher, M.D., discriminated against Jairo Enciso based on his age when they failed to take his medical complaints seriously, delayed in properly diagnosing his medical condition, and sent him home without proper medical attention. Although Plaintiff's claim is arguably plausible on its face, the Court's jurisdiction over Plaintiff's Age Discrimination Act claim is lacking as explained below.

Before the Court can proceed on the merits, it has a duty to independently satisfy itself that subject matter jurisdiction exists. *Lance v. Coffman*, 549 U.S. 437, 349 (2007); *Kennedy v. Lubar*, 273 F.3d 1293, 1301, n. 10 (10th Cir. 2001). Here, the Age Discrimination Act reflects two requirements that must be met *before* a claim can be brought in federal court. First, an "interested person" bringing an action "shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed." 42 U.S.C. § 6104(e)(1). The notice "shall state the nature of the alleged violation, the relief to be requested, the court in which the action will be brought, and whether or not attorney's fees are being demanded in the event the plaintiff prevails." 42 U.S.C. § 6104(e)(2). Second, before bringing an action under the Age Discrimination Act, the plaintiff must exhaust administrative remedies. 42 U.S.C. § 6104(e)(2), (f); 45 C.F.R. § 90.50. Administrative remedies are exhausted if 180 days have elapsed since the complainant filed a complaint before the relevant federal funding agency and the agency has made no finding, or alternatively, the agency has found in favor of the complainant. 42 U.S.C. § 6104(f); 45 C.F.R. § 90.50.

There is no indication in Plaintiff's Amended Complaint that he has satisfied either the notice or the exhaustion requirement as set forth above. Moreover, the PHS Defendants raised

this issue in their Motion to Dismiss and Plaintiff failed to respond.[7] A federal court lacks subject matter jurisdiction over Age Discrimination Act claims if either prerequisite is not met. 24 U.S.C. § 6104(e)(2) ("No action [pursuant to the Act] shall be brought . . . if administrative remedies have not been exhausted."); *see also Ombe v. Martinez*, No. 14-cv-763 RB/KBM, 2015 WL 13662809, at *3 (D.N.M. May 28, 2015) (collecting cases); *Alexander v. N.M. Vocational Rehab*., No. 7cv230 MCA/LCS, 2008 WL 11399605, at 6 (collecting cases); *Wieker v. Mesa County Valley Sch. Dist. #51*, No. 05-cv-806 WYD/CBS, 2007 WL 595629, at *9-10 (D. Colo. Feb. 21, 2007).

For the foregoing reasons, the Court finds that Plaintiff has failed to provide notice or exhaust administrative remedies as required by the Age Discrimination Act. The Court, therefore, recommends that Plaintiff's claim for discrimination based on age be dismissed without prejudice for lack of subject matter jurisdiction. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (a dismissal for lack of jurisdiction is generally without prejudice).

**b. <u>Rehabilitation Act</u>**

The Rehabilitation Act prohibits programs receiving federal financial assistance from discriminating solely on the basis of disability. *See* 29 U.S.C. 794(a). Plaintiff's Amended Complaint appears to allege that during the course of his illness, Jairo Enciso became disabled by virtue of his ALS. Indeed, Plaintiff first raises a claim of discrimination based on disability

[7] The Court's Local Rules provide that "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ 7.1(b). Implicit in that rule is that the failure to respond to an argument raised in a motion constitutes consent to grant the motion to the extent associated with that particular argument. Furthermore, under Tenth Circuit law, failing to respond constitutes waiver. *See, e.g., Cole v. New Mexico*, 58 F. App'x 825, 829 (10th Cir. Feb. 6, 2003) (unpublished) (argument waived when not raised in initial response to motion to dismiss); *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768 (10th Cir. Aug. 28, 2001) (unpublished) (plaintiff abandoned claim when failed to respond to arguments made in support of summary judgment). *See Lewis v. XL Catlin*, No. 20-CV-705 JCH/KRS, 2021 WL 2291348, at *6 (D.N.M. June 4, 2021)

during the time when Jairo Enciso was at Presbyterian Downton Hospital under the care of Herman Gleicher, M.D. Doc. 1-1 at 83-84, ¶¶ 5-6. The PHS Defendants argue that Plaintiff's claim of discrimination based on disability should be dismissed because Plaintiff does not allege that Jairo Enciso was treated differently than other patients solely on the basis of disability, and that certain of the named Defendants are not a "program or activity" and there is no allegation that they received federal financial assistance.[8] Doc. 5 at 8-9.

Section 504 of the Rehabilitation Act states in pertinent part that

> [n]o otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

To state a claim, therefore, Plaintiff must prove that Jairo Enciso was (1) disabled under the Act; (2) that he was "otherwise qualified" to participate in the program; (3) that the program discriminated against him solely by reason of his handicap; and (4) that the program received federal financial assistance (or is a federal agency). *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992); *see also Sullivan v. Univ. of Kansas Hosp. Auth.,* 844 F. App'x 43, 48 (10th Cir. 2021). Applying this legal standard here, the Court finds that Plaintiff's Amended Complaint fails to satisfy either the second or third elements for stating a claim upon which relief can be granted.

Addressing the third element first, the Court finds that Plaintiff's Amended Complaint fails to allege facts that the PHS Defendants discriminated against Jairo Enciso *solely* because of his disability. In *Johnson by Johnson*, 971 F.2d at 1492-93, the Tenth Circuit analyzed a claim under Section 504 of the Rehabilitation Act and held that "to state a claim under section 504,"

[8] The PHS Defendants referred to are Roger Gildersleeve, M.D., Andrew Edwards, M.D., Gabriel Palley, M.D., and Ilse Ponce-Hernandez, R.N. Doc. 5 at 9.

the plaintiff must prove in part that "he was discriminated against *solely* by reason of his handicap . . . ." *Id.* (citations and brackets omitted) (emphasis added).[9] The court explained that "Section 504, by its very terms, does not cover discrimination among similarly handicapped persons." *Id.* (citing *Clark v. Cohen*, 613 F. Supp. 684, 693 (E.D. Pa. 1985), *aff'd on other grounds*, 794 F.2d 79 (3d Cir. 1986), *cert. denied*, 479 U.S. 962, 107 S.Ct. 459, 93 L. Ed. 2d 404 (1986)). The court further noted that "[t]he word *solely* provides the key: the discrimination must result from the handicap and from the handicap alone." *Id.; see also Fitzgerald v. Corrections Corporation of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) (explaining that under the . . . Rehabilitation Act, a plaintiff is obligated to show that the benefits he sought were denied "solely by reason of disability").

Here, Plaintiff alleges that the discrimination against Jairo Enciso was based on both age *and* disability and makes no allegations that Jairo Enciso was denied medical treatment solely because of his disability. In *Johnson by Johnson*, the court noted that the disabled persons alleged they were denied medical care because of their disability and also because of their socioeconomic status. 971 F.2d at 1493. Consequently, the court found that the disabled persons failed to state a claim for discrimination under Section 504. *Id.* Likewise here, because Plaintiff argues that the alleged discrimination against Jairo Enciso was due to additional reasons other than his alleged disability, he fails to state a claim under Section 504 of the Rehabilitation Act.

Next, in addressing the second element for stating a claim pursuant to the Rehabilitation Act, the Court finds that Plaintiff's Amended Complaint also fails to show how Jairo Enciso was

[9] In *Johnson by Johnson*, appellants alleged discrimination under Section 504 of the Rehabilitation Act against infants with spina bifida and based on low socioeconomic status. 971 F.2d 1487.

*"otherwise qualified"* for the denied medical treatment. The Tenth Circuit explained this second element in *Johnson by Johnson* as follows:

> The "otherwise qualified" language, when considered in conjunction with the "solely" language of the third condition, poses a formidable obstacle for anyone alleging discrimination in violation of section 504 based upon the failure to receive medical treatment for [their disability]. Such a plaintiff must prove that he or she was discriminatorily denied medical treatment because of the [disability] and, at the same time, must prove that, in spite of the [disability], he or she was "otherwise qualified" to receive the denied medical treatment. Ordinarily, however, if such a person were not so [disabled], he or she would not need the medical treatment and thus would not "otherwise qualify" for the treatment.

971 F.2d at 1493. In its holding that infants born with form of spina bifida were not "otherwise qualified" for the treatment they did not receive, the Tenth Circuit agreed with the Second Circuit's reasoning that "[w]here the [disability] is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *Id.* at 1493-94 (quoting *United States v. Univ. Hosp., State Univ. of New York at Stony Brook*, 729 F.2d 144, 157 (2d Cir. 1984)); *see also Fitzgerald*, 403 F.3d at 1144 (stating that "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'").

Similarly, in *Fitzgerald*, the Tenth Circuit found that where a prisoner alleged that a doctor discriminated against him by denying surgery for a broken hip, the prisoner could not show he was "otherwise qualified" for treatment because the prisoner's alleged disability, *i.e.,* the broken hip, was the very reason for seeking treatment. 403 F.3d at 1144*; see also Sullivan,* 844 F. App'x at 48 (explaining that a plaintiff must prove that he or she was discriminatorily denied medical treatment because of a medical condition and, at the same time, must prove that, in spite of the medical condition, he or she was "otherwise qualified" to receive the denied medical treatment).

The Tenth Circuit's holdings in *Johnson by Johnson* and *Fitzgerald* apply here. Plaintiff's Amended Complaint alleges that Jairo Enciso's disability of ALS was the condition for which he required medical treatment, yet Plaintiff presents no allegations demonstrating that Jairo Enciso, absent his ALS, was *otherwise qualified* to receive the medical treatment he was denied. Accordingly, his claim of discrimination against Jairo Enciso under Section 504 of the Rehabilitation Act necessarily fails.

Lastly, the Court finds that leaving open the opportunity for Plaintiff to amend his discrimination claim based on disability pursuant to Section 504 of the Rehabilitation Act would be futile. A pleading is futile if, "as amended, [it] would be subject to dismissal." *In re Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. 571, 580 (D.N.M. 2010) (citing *Bradley*, 379 F.3d at 901). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999); *see also Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1251 (N.D. Okla. 2011) ("In order to determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the court on a motion to dismiss pursuant to Rule 12(b)(6).") (brackets omitted). Here, Plaintiff has already had one opportunity to amend his complaint against the PHS Defendants and the Amended Complaint appears to contain all of the facts Plaintiff can allege. Further, for the reasons discussed above, the Court has found that the facts as alleged in Plaintiff's Amended Complaint do not and cannot support a claim upon which relief can be granted for discrimination against Jairo Enciso pursuant to Section 504 of the Rehabilitation. Finally, Plaintiff failed to respond to the PHS Defendants' arguments in their Motion to Dismiss related to Plaintiff's alleged federal claim for discrimination based on

disability thereby constituting Plaintiff's consent for granting the Motion to Dismiss as to this issue.[10]

For the foregoing reasons, the Court finds that Plaintiff's Amended Complaint fails to allege that the PHS Defendants discriminated against Jairo Enciso solely because of his disability or that Jairo Enciso would have been otherwise qualified for treatment absent his medical condition. The Court, therefore, recommends that Plaintiff's claims of discrimination based on disability be dismissed with prejudice for failure to state a claim upon which relief can be granted. *See Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

**2. <u>State Law Claims</u>**

Having determined that Plaintiff's federal claims of discrimination against the PHS Defendants should be dismissed, the Court must determine whether supplemental jurisdiction should be retained over Plaintiff's state claims. The exercise of supplemental jurisdiction is discretionary. *See New Mexico v. General Electric Co.*, 335 F. Supp. 2d 1157, 1176 (D.N.M. 2003) (citing *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172 (1997)). A federal court may decline supplemental jurisdiction over state law claims if, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Tenth Circuit has indicated that if, prior to trial, "all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (emphasis added); *see also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228,

[10] *See* fn. 6, *supra.*

1237-39 (10th Cir. 2020) (reversing a district court for failing to decline supplemental jurisdiction). Further, the Supreme Court has indicated that in a removed case, like the instant case, remand is often preferable to dismissal without prejudice in order to "best promote the value of economy, conveniences, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353, 108 S.Ct. 614 (1988).

Accordingly, because the Court has recommended that Plaintiff's federal claims be dismissed in their entirety and there appears to be no other basis for federal jurisdiction over Plaintiff's state claims, it is recommended that supplemental jurisdiction be declined over the claims arising under state law and that this case be remanded to state court.

## IV. RECOMMENDATION

For all of the foregoing reasons, the Court recommends as follows:

1. That Plaintiff's ACA claim in his Amended Complaint for discrimination based on age pursuant to the Age Discrimination Act be dismissed without prejudice for lack of subject matter jurisdiction;[11]

2. That Plaintiff's ACA claim in his Amended Complaint for discrimination based on disability pursuant to Section 504 of the Rehabilitation Act be dismissed with prejudice for failure to state a claim upon which relief can be granted;[12]

3. The Plaintiff's Amended Complaint alleging discrimination based on Jairo Enciso's ALS being "incurable" be dismissed with prejudice for failure to state a claim upon which relief be granted;[13] and

---

[11] *See Brereton*, 434 F.3d at 1216 (a dismissal for lack of jurisdiction is generally without prejudice).

[12] *See Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

[13] *Id.; See* fn. 5, *supra*.

4. That Plaintiff's state law claims be remanded to the Second Judicial District Court, State of New Mexico, County of Bernalillo.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**